IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 17, 2008

**STATE OF TENNESSEE v. WILLIAM EUGENE CANTRELL**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2007-I-1135, 2007-I-1445     J. Randall Wyatt, Jr., Judge**

_____

**No. M2008-00496-CCA-R3-CD - Filed February 13, 2009**

_____

The defendant, William Eugene Cantrell, pled guilty to aggravated burglary, a Class C felony, and burglary of a motor vehicle, a Class E felony, and was sentenced as a Range I, standard offender, to three years and one year, to be served consecutively. On appeal, he argues that the trial court erred in imposing a sentence of continuous confinement. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender (on appeal), and Jonathan F. Wing, Assistant Public Defender (at hearing), for the appellant, William Eugene Cantrell.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Benjamin J. Ford, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the defendant's guilty plea hearing, the State summarized the proof it was prepared to present at trial:

> [I]n case 2007-I-1135, . . ., had the case gone to trial, the [S]tate would have shown that on August 4th of [2007], the victim in this case filed a police report stating that his residence located at 905 North Second Street, here in Davidson County[,] had been broken into. The victim advised that several types of pills and medicines had

been stolen, reported that his window had been busted out with a rock, and the air conditioning had been pushed in for the suspect to enter the residence. The police located a bloody rock and a bag of pills on the porch at 903 North Second Street, which is the defendant's residence. The pills and medicines were identified as the victim's.

Detectives went to 903 North Second and talked to the defendant, who, ultimately, admitted that he broke into the residence right after he saw the victim leave home. The defendant stated that he was intoxicated and when he went through the window, he saw the pills and he just wanted to get higher. He also admitted that the blood on the rock was his because he had cut his arm on the window trying to get in.

. . . .

. . . [In case no.] 2007-I-1445, . . ., had the [S]tate gone to trial, the [S]tate would have shown that on September 29th of [2007], the same victim in the previous case heard breaking glass outside his residence. When he looked out the window[,] he observed the defendant getting into his vehicle through the driver's side window. Another witness also observed the defendant break out the car window and get into the vehicle. The victim stated that the defendant was the only person in the area of his vehicle at that time. When the victim came outside, the defendant was in the vehicle going through his car. The victim tried to keep the defendant at the vehicle until the police . . . arrive[d]. While trying to escape, the defendant lost his shoe in the victim's car. The defendant fled the scene and [he] was located at the house next door and taken into custody. He was read his rights after he was taken into custody. By that time he admitted that he was in the vehicle, but he stated that someone else had broken . . . the window.

At the February 1, 2008, sentencing hearing, the victim, Willie Beach, testified that on the morning of August 4, 2007, he drove his live-in friend to her dialysis appointment. When he returned home at about 5:15 a.m., he discovered that someone had broken into his house by pushing a window air conditioner inside his residence. Beach said that his and his friend's prescription medications were missing. As to the burglary of his vehicle, Beach said that on September 29, 2007, he was at home watching television when he heard a "[c]rash." He looked out a window and saw the defendant, who was his next-door neighbor, in his car. Beach went outside and asked the defendant what he was doing and chased him away with a stick. Nothing was missing from the car, but the window was damaged. Beach said that the defendant broke into his car after he was arrested for the burglary of his house and released on bond. Beach said that the defendant still lived next-door to him and that he and his friend did not feel safe. He said he had seen the defendant "smoking dope" in his yard.

Sharon Adams, the defendant's aunt, testified that she lived across the street from the victim and that her mother and the defendant lived next-door to the victim. She said that the defendant is "a little slow. It takes him a while to catch onto things." She said that, since the defendant's release on bond, he had worked "every now and then" and had "pretty much . . . been staying in the house." Adams related that the defendant "can't handle alcohol at all" and said he had been attending a treatment program and seeing a mental health caseworker. She said that the defendant had not been in trouble before the burglaries. She said that, if the defendant were granted probation, she would provide transportation for his treatment and he could live with his sister in another part of town. On cross-examination, Adams said she was not aware of the defendant's prior convictions for disorderly conduct and leaving the scene of an accident.

Eric Mayle, the defendant's case manager at Mental Health Cooperative, testified that the defendant had been diagnosed with alcohol addiction and Bipolar One. Medications had been prescribed for the defendant, but Mayle did not know which ones. He said that he met with the defendant a minimum of twice a month and that he would assist the defendant in obtaining treatment at Park Center East, a rehabilitative program requiring daily attendance.

The twenty-two-year-old defendant testified that he dropped out of school in the eleventh grade. He admitted that he had been drinking when he committed the burglaries and that drinking was "a big problem" for him. The defendant said he would continue his alcohol treatment and take his prescribed medication if granted probation. Asked how he felt about the offenses he committed, the defendant said, "I'm really sorry. I mean, I can't go back and change it but if I could I would. I mean I ain't got no kind of beef with [the victim] or nothing like that. And this is the first problem I had, I mean."

At the conclusion of the hearing, pursuant to the plea agreement, the trial court sentenced the defendant to three years for the aggravated burglary conviction and one year for the burglary of a motor vehicle conviction, to be served consecutively. Finding that a sentence less serious than confinement would depreciate the seriousness of the offenses, the trial court denied the defendant's request for probation or other alternative sentencing and ordered that the defendant serve his sentence in confinement.

## ANALYSIS

The defendant's sole issue on appeal is whether the trial court erred in imposing a sentence of continuous confinement. He argues that he does not meet any of the three statutory criteria supporting the imposition of continuous confinement, his prior criminal record consists of only two minor misdemeanor offenses, he demonstrates favorable prospects of rehabilitation, and the circumstances of the offenses were not especially shocking or reprehensible and do not outweigh the factors favoring an alternative sentence. The State argues that the trial court correctly imposed a sentence of confinement to avoid depreciating the seriousness of the offenses and to provide an effective deterrent to others likely to commit similar offenses.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

As a standard offender convicted of Class C and E felonies, the defendant should be considered as a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6)(A) (2006). Moreover, because he received a sentence of ten years or less, he was eligible for probation, and the trial court was required to consider probation as a sentencing option. Id. § 40-35-303(a), (b). The burden was upon the defendant to show he was a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Additionally, "[d]enial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation." Bingham, 910 S.W.2d at 456 (citation omitted).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

In imposing a sentence of confinement, the trial court stated:

[The defendant] has obviously a drinking and alcohol problem and he may have this dual diagnosis, I'm not ignoring that. And I think he probably needs some help, at some point.

But as far as this case is concerned, particularly when he does this, gets out on bond and goes right back and breaks back into the man's . . . there's no way [the defendant is] going to be put on probation here, today, in this court, under these circumstances, because as much as I might understand him and have this sympathy he's talking about, I got sympathy for Mr. Beach [the victim].

And . . . [h]e's been sitting here patiently for three and a half hours, four hours, whatever this is, and his friend, who is seriously ill on dialysis.

That's who I'm worried about, I'm worried about him, number one. I'm concerned with him, too. But my main focus is on the victim and the person who has to live in a home and have his next door neighbor doing this to him twice in about two weeks.

. . . .

Mr. Cantrell, at some point in your life you need to get some help and I appreciate Mr. Mayle and the kind of work he does to help people. But at this point a message needs to be sent to you and anybody else that's interested in this case, . . . that this case is too serious to depreciate the seriousness of it by just letting you waltz around here today and get back into some kind of slump again and drink, or do whatever you're doing out there and breaking back into this man's house.

Further, the court noted that it would enter an order for the defendant to serve his sentence at Corrections Corporation of America (CCA) where he could receive alcohol treatment through the Life Lines program.

According to the defendant's presentence report, he has prior convictions for leaving the scene of an accident and disorderly conduct. The defendant has a tenth grade education, and his employment history consists of one job for three months. The defendant admitted to the probation officer who prepared the presentence report that he began drinking at age sixteen and that he drank "40's" every day. The defendant also said that he started using marijuana at age fifteen and had used it every day before being incarcerated for the present offenses. Additionally, as the trial court noted, the defendant was on bond for the first burglary charge when he committed the second burglary. We conclude that the record supports the trial court's imposition of a sentence of continuous confinement.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the trial court's denial of alternative sentencing.

_____
ALAN E. GLENN, JUDGE